UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

DOCKET NO. 05-40128-FDS

---

CLEARLINK FINANCIAL SERVICES, INC.
(formerly known as MFP Financial Services, Inc.)
Plaintiff and Defendant-in-Counterclaim,

v.

STEPHEN SCHULTZ,
Defendant and Plaintiff-in-Counterclaim.

---

## REPLY TO STEPHEN SCHULTZ'S COUNTERCLAIM AND COUNTERCLAIM AGAINST STEPHEN SCHULTZ

Clearlink Financial Services, Inc. ("Clearlink") responds to the correspondingly

numbered paragraphs of the Counterclaim filed by Stephen Schultz ("Counterclaim") as follows:

1.     Denied. To the extent the allegations set forth in paragraph 1 of the Counterclaim

contain conclusions of law and no factual allegations, no response is required.

2.     Clearlink admits that on or about August 11, 2000, Stephen A. Schultz and MFP

Financial Services, Inc. entered into an agreement entitled Share Purchase Agreement, which

speaks for itself. Clearlink further admits that on or about August 11, 2000, Defendant Schultz

executed an Agreement relating to his employment, which speaks for itself. Clearlink denies the

remaining allegations, if any, set forth in paragraph 2 of the Counterclaim and further states that

to the extent the allegations sets forth in paragraph 2 of the Counterclaim contain conclusions of

law, no response is required. In further response, Clearlink states that on March 7, 2002, the

Plaintiff-in-Counterclaim, in exchange for payment of $56,500.00, executed an Agreement and

General Release ("Release") whereby he released Clearlink from any and all charges,

complaints, and claims arising out of any alleged violations of any contracts, express or implied, or any state law tort claim, or any federal, state, or other governmental statute, regulation or ordinance, including without limitation from any claims involving entitlement to compensation. A true and accurate copy of the Release is attached hereto at Exhibit A.

3.    The Share Purchase Agreement speaks for itself. Clearlink denies the remaining allegations, if any, set forth in paragraph 3 of the Counterclaim.

4.    The Share Purchase Agreement speaks for itself. Clearlink denies the remaining allegations, if any, set forth in paragraph 4 of the Counterclaim.

5.    Denied.

### Count I: Breach of Contract

6.    Clearlink repeats and incorporates herein its answers to paragraphs 1 through 5 of the Counterclaim.

7.    Denied.

### Count II: Unjust Enrichment

8.    Clearlink repeats and incorporates herein its answers to paragraphs 1 through 7 of the Counterclaim.

9.    Denied.

### Count III: Fraud, Misrepresentation and Deceit

10.    Clearlink repeats and incorporates herein its answers to paragraphs 1 through 9 of the Counterclaim.

11.    Denied.

## Affirmative Defenses

1.      The Counterclaim should be dismissed for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6).

2.      The Counterclaim should be dismissed because the Plaintiff-in-Counterclaim failed to identify or define the parties to the Counterclaim.

3.      The Counterclaim is barred by the doctrines of waiver and estoppel.

4.      The claims raised in the Counterclaim have been released and/or discharged.  The Plaintiff-in-Counterclaim is barred from recovery by the express terms of the Agreement and General Release ("Release") which he executed on March 7, 2002.  Pursuant to the express terms of the Release, Clearlink paid the Plaintiff-in-Counterclaim $56,500.00, less applicable taxes and withholding, and in exchange the Plaintiff-in-Counterclaim released Clearlink, of and from any charges, complaints, claims arising out of alleged violations of any contracts, express or implied, or any state law tort claim, or any federal, state, or other governmental statute, regulation or ordinance.

5.      In light of the Release, the Counterclaim should be dismissed because it constitutes an abuse of process and is maliciously prosecuted against Clearlink.

6.      In light of the Release, Plaintiff-in-Counterclaim's claims are wholly insubstantial, frivolous, meant to harass Clearlink and advanced in bad faith.  In particular, paragraph 5 of the Release expressly requires the Plaintiff-in-Counterclaim to withdraw any case from any local, state or federal agency or court if said court or agency assumes jurisdiction of any charge, complaint or lawsuit filed by the Plaintiff-in-Counterclaim against Clearlink.  In addition, by filing the instant Counterclaim, the Plaintiff-in-Counterclaim has breached the

Release. Accordingly, pursuant to G. L. c. 231, §6F, Clearlink is entitled to the reasonable attorney's fees, costs and expenses it incurs in defending against the Counterclaim.

7.      The Counterclaim is barred due to the doctrine of accord and satisfaction. In compliance with the Release, and in accord and satisfaction of all of its obligations to Schultz, Clearlink paid the Plaintiff-in-Counterclaim $56,500.00 in exchange for the terms set forth in the Release.

8.      The Plaintiff-in-Counterclaim is barred from recovery by his own material breaches.

9.      The Plaintiff-in-Counterclaim is barred from recovery by the doctrine of unclean hands.

10.     The Plaintiff-in-Counterclaim is barred from recovery because conditions necessary to payment were not met.

11.     The Plaintiff-in-Counterclaim is barred by the doctrine of laches.

12.     The Plaintiff-in-Counterclaim is barred from recovery by his own negligent conduct and misrepresentations.

13.     The Plaintiff-in-Counterclaim is barred from recovery by his own fraudulent conduct and misrepresentations.

14.     Any damages sustained by the Plaintiff-in-Counterclaim were caused by a party for whose conduct Clearlink was not and is not legally responsible.

15.     The Plaintiff-in-Counterclaim is barred from recovery by applicable statutes of limitations.

16.     The Plaintiff-in-Counterclaim has failed to plead fraud, deceit and misrepresentation with particularity pursuant to Fed.R.Civ.P. 9(b).

## CLEARLINK FINANCIAL SERVICES, INC.'S COUNTERCLAIM

Clearlink Financial Services, Inc., hereby submits the following Counterclaim in response to the Stephen Schultz's Counterclaim:

1.     Clearlink Financial Services, Inc., formerly known as MFP Financial Services, Inc, ("Clearlink") is a corporation organized and existing under the laws of the State of Delaware, with principal place of business at 2281 North Sheridan Way, Mississauga, Ontario.

2.     Stephen Schultz ("Schultz") is a citizen and resident of the Commonwealth of Massachusetts, residing at 58 Prescott Street, Apartment 9, Lowell, Massachusetts.

## FACTUAL BACKGROUND

3.     Clearlink repeats and incorporates herein the allegations set forth in its original Complaint.

4.     Schultz's employment with Clearlink terminated on or about March 8, 2002.

5.     On or about March 7, 2002, Schultz executed an Agreement and General Release ("Release") in favor of Clearlink. A true and accurate copy of the Release is attached hereto at Exhibit A.

6.     Paragraph 1 of the Release provides that Clearlink will pay Schultz $56,500.00 and in exchange Schultz will discharge Clearlink of any of its obligations to Schultz "for compensation, lost wages, benefits, pain and suffering, or any other expectation of remuneration or benefit on the part of [Schultz]."

7.    Pursuant to paragraph 5 of the Release, Schultz expressly represented and promised that he would not file any complaints, charges or lawsuits with any local, state, or federal agency or court against Clearlink, "based upon any matter, including but not limited to matters involving alleged contract liability, entitlement to compensation, and/or discrimination of any type that arose on or before the execution of [the Release] ...."

8.    Pursuant to paragraph 5 of the Release, Schultz also expressly represented and promised that. if any local, state, or federal agency or court assumed jurisdiction of any charge, complaint, or lawsuit against Clearlink on behalf of Schultz, he would request that the agency or court withdraw from the matter.

9.    Paragraph 6 of the Release provides in pertinent part:

> As a material inducement to [Clearlink] to enter into [the Release], Schultz hereby irrevocably and unconditionally releases and discharges [Clearlink], and each of its predecessors, parent companies, related companies, affiliates, successors, assigns, owners, stockholders, directors, officers, partners, employees, representatives, agents, attorneys, divisions, subsidiaries ... (collectively 'Releasees'), and each of them, of and from any and all charges, complaints, claims or liabilities (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, including, but not limited to, rights arising out of alleged violations of (sic) any contracts, express or implied, or any state law tort claim, or any federal, state, or other governmental statute, regulation, or ordinance ... which [Schultz] now has, owns or holds, or claims to have, own or hold, or which [Schultz] at any time heretofore has, owned or held, or claimed to have, own or hold, or which [Schultz] at any time hereinafter may claim to have, own, or hold, against each or any of the Releasees.

10.    Pursuant to paragraph 9 of the Release, Schultz expressly acknowledged and represented that the Release is intended to include in its effect all claims that Schultz does not know or suspect to exist in his favor at the time of the execution of the Release, and that the Release contemplated the extinguishment of any such claims.

11.    On or about DATE, in full compliance with the Release, Clearlink paid Schultz $56,500.00, the consideration set forth in the Release.

12.    Schultz accepted the consideration for the Release, and thereby accepted its terms and conditions.

## Count I: Breach of Contract

13.    Clearlink repeats and incorporates herein its allegations set forth in paragraphs 1 through 12 above.

14.    Schultz breached the Release by, *inter alia,* filing his Counterclaim against Clearlink and failing to withdraw the same in violation of its clear and express terms.

15.    Clearlink has sustained damages as a direct and proximate result of Schultz's breach of contract.

## Count II: Abuse of Process

16.    Clearlink repeats and incorporates herein its allegations set forth in paragraphs 1 through 15 above.

17.    The Release, by its plain and express terms, prohibits Schultz from filing any Counterclaim, and in particular the Counterclaim he filed in the instant action, against Clearlink. By filing said Counterclaim, Schultz made, with malice, an illegal and improper use of process against Clearlink for an illegal and improper purpose.

18.    Clearlink has sustained damages as a direct and proximate result of Schultz's abuse of process.

19.    In light of the Release, Schultz's Counterclaim against Clearlink is wholly insubstantial, frivolous, meant to harass Clearlink and advanced in bad faith, and Clearlink is entitled to the reasonable attorney's fees, costs and expenses it incurs in defending against Schultz's Counterclaim pursuant to G. L. c. 231, §6F.

WHEREFORE, Clearlink Financial Services, Inc. respectfully requests that this Court enter judgment against Stephen Schultz and:

1.    Determine the amount of single damages due to Clearlink;

2.    Double or treble the amount of single damages due to Clearlink;

3.    Award interests and costs;

4.    Award reasonable attorneys' fees to Clearlink; and

5.    Grant such other relief as the court deems appropriate.

CLEARLINK Financial Services, Inc.
By its counsel,

William D. Jalkut, Esquire  BBO#250020
Nisha Koshy Cocchiarella BBO#644710
FLETCHER, TILTON & WHIPPLE, P.C.
370 Main Street, 12th Floor
Worcester, MA 01608
(508) 459-8045 – Telephone
(508) 459-8345 – Facsimile

Appearance To Be Sought Pro Hac Vice
William B. B. Smith, Esquire
Georgia Bar No. 664637
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia
(404) 521-3939/Telephone
(404) 581-8330/Facsimile

## CERTIFICATE OF SERVICE

I, Nisha Koshy Cocchiarella, hereby certify that on October 19, 2005, I served a true and accurate copy of the foregoing Reply to Counterclaim and Counterclaim via first class mail, postage prepaid:

Daniel W. Cronin, Esq.
P.O. Box 676
Lunenburg, MA 01462

Exhibit A.

## AGREEMENT AND GENERAL RELEASE

THIS AGREEMENT AND GENERAL RELEASE ("Agreement") is made and entered into by and between Stephen Schultz ("Employee") and MFP Financial Services Inc. ("MFP").

### W I T N E S S E T H:

WHEREAS, Employee's employment with MFP terminated on March 8, 2002; and

WHEREAS, Employee and MFP desire to settle fully and finally all differences between them, including, but not limited to, any differences that might arise out of the Employee's employment with MFP, and the termination thereof;

NOW, THEREFORE, in consideration of the premises and mutual promises herein contained and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Employee and MFP agree as follows:

1.    Benefits. MFP will provide Employee with a lump sum payment of $56,500.00, less applicable taxes and withholdings, in accordance with applicable law. This payment shall be in lieu of and discharge any obligations of MFP to Employee for compensation, lost wages, lost benefits, pain and suffering, or any other expectation of remuneration or benefit on the part of Employee. Other than the obligations specifically set forth in this paragraph, MFP shall have no other obligations to Employee under this Agreement. Employee understands and agrees that payment of the sum described herein is not required by MFP's policies and procedures.

2.    Non-Admission of Liability. This Agreement shall not in any way be construed as an admission by MFP that it has acted wrongfully or breached any agreement with respect to Employee or any other person, or an admission of any acts of discrimination whatsoever against Employee, and MFP specifically disclaims any liability to or discrimination against Employee, on the part of itself, its employees, or its agents.

3.    Cessation of Authority. Employee understands and agrees that effective March 8, 2002, he was and is no longer authorized to incur any expenses, obligations, or liabilities on behalf of MFP.

4.    Return of Company Materials and Property. Employee understands and agrees that he will immediately turn over to MFP all files, memoranda, records, credit cards, and other documents, physical, or personal property that Employee received from MFP and that are the property of MFP.

5.    No Other Claims. Employee represents that he has not filed any complaints, charges, or lawsuits with any local, state, or federal agency or court against MFP, that he will not do so at any time hereafter based upon any matter, including but not limited to matters involving alleged contract liability, entitlement to compensation, and/or discrimination of any type that arose on or before the execution of this Agreement, and that if any such agency or court assumes jurisdiction of any such charge, complaint, or lawsuit against MFP on behalf of Employee, he will request such agency or court to withdraw from the matter.

12/14/2004 13:36 FAX 905 403 0 ⌐ ⌐         CLEARLINK                                    ☑006

- 2 -

6.    <u>Complete Release</u>.    As a material inducement to MFP to enter into this Agreement, Employee hereby irrevocably and unconditionally releases and discharges MFP, and each of its predecessors, parent companies, related companies, affiliates, successors, assigns, owners, stockholders, directors, officers, partners, employees, representatives, agents, attorneys, divisions, subsidiaries, (and owners, stockholders, directors, officers, partners, employees, representatives, agents and attorneys of such predecessors, parent companies, related companies, affiliates, successors and divisions), and all persons acting by, through, under or in concert with any of them (collectively "Releasees"), and each of them, of and from any and all charges, complaints, claims, or liabilities (including attorneys' fees and costs actually incurred) of any nature whatsoever, known or unknown, suspected or unsuspected, including, but not limited to, rights arising out of alleged violations or any contracts, express or implied, or any state law tort claim, or any federal, state, or other governmental statute, regulation, or ordinance, including but not limited to, claims under Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act, 29 U.S.C. Sections 621-634 (collectively "Claim or Claims"), which Employee now has, owns or holds, or claims to have, own or hold, or which Employee at any time heretofore has, owned or held, or claimed to have, own or hold, or which Employee at any time hereinafter may claim to have, own, or hold, against each or any of the Releasees.

7.    <u>Confidentiality.</u>    Employee represents and agrees that he will keep the terms, amount, and fact of this Agreement completely confidential, and that he will not hereafter disclose any information concerning this Agreement to anyone other than Employee's immediate family and professional representatives who will be informed of and bound by this confidentiality clause.

8.    <u>Consultation with Counsel</u>.    Employee represents and agrees that he fully understands his right to discuss all aspects of this Agreement with his private attorney, that to the extent, if any, that he desired, he has availed himself of this right, that he has carefully read and fully understands all the provisions of this Agreement, and that he is knowingly and voluntarily entering into this Agreement.

9.    <u>Knowing and Voluntary Waiver</u>.    For the purpose of implementing a full and complete release and discharge of MFP, Employee expressly acknowledges that this Agreement is intended to include in its effect, without limitation, all Claims that employee does not know or suspect to exist in his favor at the time of execution hereof, and that this Agreement contemplates the extinguishment of any such Claim or Claims. In executing this Agreement, Employee expressly represents that he is doing so voluntarily and of his own free will and that he is of sound mind at the time of said execution.

10.    <u>No Representations</u>.    Employee represents and acknowledges that in executing this Agreement, he does not rely, and has not relied, upon any representation or statement made by any of the Releasees or by any of the Releasees' agents, representatives, or attorneys with regard to the subject matter, basis, or effect of this Agreement or otherwise.

- 3 -

11.   Acceptance and Revocation.   This Agreement was presented to Employee for review and consideration on March 8, 2002 ("Review Date"). Employee understands that he has forty-five (45) days from the Review Date within which to decide whether to execute this Agreement and return it to MFP. If Employee does not return this Agreement fully executed within forty-five (45) days of the Review Date, any offer implied by the representation of the Agreement for Employee's review and consideration is withdrawn in its entirety at that time. Employee further understands that he has seven (7) days after execution of this Agreement within which to provide MFP with written notice of revocation of the Agreement ("Revocation Period"). If said written notice of revocation is not received by MFP by the close of business on the seventh day following Employee's execution of this Agreement, this Agreement shall be final, binding, and irrevocable.

12.   Effective Date.    This Agreement shall not become effective in any respect until the Revocation Period has expired without notice of revocation. In the absence of Employee's revocation of this Agreement, the eighth day after Employee's execution of this Agreement shall be the "Effective Date" of the Agreement.

13.   Sole and Entire Agreement.   The Agreement sets forth the entire agreement between the parties hereto, and fully supersedes any and all prior agreements or understandings between the parties hereto pertaining to the subject matter hereof.

14.   Severability.   The provisions of this Agreement are severable, and if any part of it is found to be unenforceable, the other paragraphs shall remain fully valid and enforceable. This Agreement shall survive the termination of any arrangements contained herein.

PLEASE   READ   AND   CONSIDER   THIS   AGREEMENT   CAREFULLY   BEFORE EXECUTING. THIS AGREEMENT AND GENERAL RELEASE INCLUDES A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.

Executed at _301 leominster RD    Sterling_, this _7_ day of _March_, _2002_, 2002.

_____
Employee

_____
Witness